IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BEHAJAT SEDIGHI and                              07-CV-1881-BR
SEYED BADIOZAMAM HESHEMI,

                Plaintiffs,                      OPINION AND ORDER

v.

MICHAEL B. MUKASEY, United
States Attorney General;
ROBERT S. MUELLER, III; Director,
Federal Bureau of Investigation;
MICHAEL A. CANNON, Chief, National
Name Check Program; MICHAEL
CHERTOFF, Secretary of Homeland
Security; EMILIO GONZALEZ, Director,
USCIS; F. GERALD HEINAUER, Director,
USCIS Northern Service Center;
and WILLIAM McNAMEE, Director,
USCIS Portland,

                Defendants.

**MICHAEL T. PURCELL**
520 S.W. Yamhill
Suite 422
Portland, OR 97204
(503) 241-8203

                    Attorney for Plaintiffs

**KARIN J. IMMERGUT**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, OR 97204
(503) 727-1026

                    Attorneys for Defendants


**BROWN, Judge.**

        This matter comes before the Court on Plaintiffs' Motion

(#22) for Summary Judgment and Defendants' Cross-Motion (#35) for

Summary Judgment or in the Alternative to Stay Proceedings.

        For the reasons that follow, the Court **GRANTS** Plaintiffs'

Motion and **DENIES** Defendants' Motion.


                         <u>**BACKGROUND**</u>

        Plaintiffs Behajat Sedighi and Seyed Badiozamam Hashemi[1] are

wife and husband and citizens of Iran.  At some point, Plaintiffs

applied for asylum in the United States.  On March 14, 1996, an

---

        [1] Although the case caption lists "Seyed Badiozamam Heshemi"
as a Plaintiff, the supporting documentation and administrative
record consistently refer to "Seyed Badiozamam *Hashemi*."  The
Court, therefore, will refer to this Plaintiff as Hashemi.

administrative law judge (ALJ) heard Plaintiffs' asylum applications and denied them.  Plaintiffs appealed the ALJ's decision to the Board of Immigration Appeals (BIA).

On July 30, 2001, the BIA sustained Plaintiffs' appeal, reversed the ALJ, and granted asylum to Plaintiffs.

On August 5, 2002, Plaintiffs each filed a Form I-485 Application with the United States Citizen and Immigration Services (USCIS) Nebraska Service Center in an effort to adjust their immigration status to that of lawful permanent residents (LPR).  When an individual applies for an adjustment of immigration status, USCIS conducts several security and background checks, including a Federal Bureau of Investigation (FBI) fingerprint check, a check against the Interagency Border Inspection System (IBIS) managed by the Department of Homeland Security (DHS), and an FBI name check.  At some point, Plaintiffs sent a letter to the President of the United States requesting action on their applications for adjustment of status.  On March 9, 2004, a Special Assistant to the President informed Plaintiffs that the White House was sending their inquiry to the DHS.

On June 16, 2004, an official at USCIS Headquarters wrote to Plaintiffs informing them that their letter to the President had been forwarded to USCIS Headquarters.  The official further advised Plaintiffs that, among other things, the delays

3 - OPINION AND ORDER

experienced by the USCIS in receiving the results of law-enforcement agency checks "has resulted in substantial delays in the processing of these applications. . . . The USCIS continues to make every effort to efficiently work through the backlog that has been created."

In April 2006, Plaintiffs wrote the USCIS Nebraska Service Center requesting action on their applications.  On May 26, 2006, Gregory Christian, the Acting Chairman of the USCIS Nebraska Service Center, informed Plaintiffs by letter that their applications had been selected for "detailed review."  Christian advised Plaintiffs that even though this meant their applications would take longer to process, the USCIS would "make every effort to complete this case as soon as possible."  On the same day, Christian informed Sedighi by letter that the USCIS Nebraska Service Center had lost her application file and requested she submit a copy of the original application, the required supporting documentation, a copy of the receipt notice for proof of payment, and a letter explaining why she was submitting a duplicate application.

On June 6, 2006, Sedighi submitted the requested materials. Sedighi was fingerprinted on December 29, 2005; January 17, 2006; July 18, 2006; and April 7, 2007.  Hashemi was fingerprinted on July 31, 2004; January 17, 2006; and April 7, 2007.

In January 2007, Plaintiffs sought assistance with their

applications from United States Senator Ron Wyden.  On
January 17, 2006, the USCIS Nebraska Service Center responded
by letter to the request by Senator Wyden's office for a reason
for the delay in processing Plaintiffs' applications.  USCIS
advised Sedighi's application was under review and Hashemi's
application was awaiting results of the FBI name check.

On August 29, 2007, the FBI completed Hashemi's name check.
On December 26, 2007, the FBI completed Sedighi's name check.

On December 26, 2007, Plaintiffs filed a Complaint for
Declaratory, Injunctive, and Mandamus Relief in this Court in
which they assert Defendants breached their duty to Plaintiffs
and violated the Administrative Procedures Act (APA),
5 U.S.C. § 555(b), by failing to adjudicate Plaintiffs' Form I-
485 Applications within a reasonable time.  Plaintiffs request
the Court (1) to assume jurisdiction over this action, (2) to
order Defendants to show cause why they have not acted promptly
on Plaintiffs' applications for adjustment of status, (3) to
issue a judgment that declares unlawful the failure of Defendants
to perform their "assigned tasks in the processing of
[Plaintiffs'] adjustment applications" within a reasonable time,
and (4) to issue a judgment that bars Defendants from instituting
any proceedings under 8 U.S.C. § 1256 to rescind approval of
Plaintiffs' adjustment of status unless such rescission is based
on newly obtained information.

5 - OPINION AND ORDER

On January 25, 2008, the USCIS issued a Notice of Intent to Deny (NOID) Plaintiffs' application based on Hashemi's membership in the Kurdish Democratic Party of Iran (KPDI), a "Tier III undesignated terrorist organization."  The USCIS informed Plaintiffs that Hashemi's membership in KPDI likely rendered both of them inadmissible under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(3)(B)(i)(IV) and (IX).

On February 26, 2008, Plaintiffs submitted to the USCIS their responses to the NOID.  Defendants have not taken any action to date.

On March 26, 2008, the Deputy Director for USCIS, Jonathan Scarfen, issued a department-wide memorandum instructing adjudicators to withhold adjudication of applications that would benefit from expanded discretionary authority granted to the Secretary of the DHS under the Consolidated Appropriations Act of 2008.  Included in that class of applications were those in which applicants and spouses were deemed inadmissible due to activity or association with a Tier III undesignated terrorist organization.

On July 28, 2008, USCIS Acting Deputy Director, Michael Aytes, continued to instruct the department to withhold adjudication of various applications, including those in which applicants and spouses were deemed inadmissible due to activity or association with a Tier III undesignated terrorist

organization.  Aytes also noted the USCIS had developed a
"212(a)(3)(B) Exemption Worksheet" to be completed by USCIS
personnel in applications involving Tier III undesignated
terrorist organizations.  Aytes pointed out that "USCIS may not
grant a benefit or relief to an alien who is inadmissible under
INA section 212(a)(3)(B) unless the worksheet is completed."

On September 9, 2008, Plaintiffs filed a Motion for Summary
Judgment in which they move the Court to enter an order requiring
Defendants to adjudicate Plaintiffs' Form I-485 Applications.
Plaintiffs assert the Court has subject-matter jurisdiction over
this action pursuant to 28 U.S.C. § 1331 in combination with the
APA and 28 U.S.C. § 1361.

On September 26, 2008, Defendants filed a Cross-Motion for
Summary Judgment in which they contend (1) the Court lacks
subject-matter jurisdiction over this matter and (2) even if the
Court has jurisdiction, the delay in adjudicating Plaintiffs'
Form I-485 Applications is not unreasonable.


## STANDARDS

**I.   Summary Judgment.**

Federal Rule of Civil Procedure 56(c) authorizes summary
judgment if no genuine issue exists regarding any material fact
and the moving party is entitled to judgment as a matter of law.
The moving party must show the absence of an issue of material

fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149

(9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

**II.  The APA and 28 U.S.C. § 1331**.

The APA provides:  "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. 555(b).  In addition, under the APA "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "Agency action" includes a failure of the agency to act.  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004).  The APA, therefore, authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

The APA does not provide an independent basis for subject-matter jurisdiction.  *Califano v. Sanders*, 430 U.S. 99, 107 (1977).  The APA, however, in conjunction with federal-question jurisdiction pursuant to 28 U.S.C. § 1331, may provide a federal court with jurisdiction to "compel agency action unlawfully

withheld or unreasonably delayed." *See, e.g., Dong v. Chertoff*,
513 F. Supp. 2d 1158, 1161 (N.D. Cal. 2007)(court held the APA in
conjunction with § 1331 "vest[ed]" the court with jurisdiction to
compel agency action unlawfully withheld or unreasonably denied),
and *Chao v. Gonzales*, No. C07-1562 PVT, 2007 WL 3022548, at *2
(N.D. Cal. Oct. 15, 2007)(court concluded the APA in combination
with § 1331 provided the court with jurisdiction to review
unlawfully withheld agency action).  As the Ninth Circuit
explained:

> A good deal of confusion among courts and
> litigants has been spawned by Congress' choice of
> words in the APA.  The APA allows that agency
> actions meeting certain criteria are "subject to
> judicial review."  5 U.S.C. § 704.  However, the
> Supreme Court has made it clear that the phrase
> "subject to judicial review" does not confer a
> grant of subject matter jurisdiction.  In *Califano
> v. Sanders*, 430 U.S. 99, 107 . . . (1977), the
> Supreme Court settled a long standing controversy
> by holding that 28 U.S.C. § 1331, rather than the
> APA, confers jurisdiction on federal courts to
> review agency action.  *Id.*

*Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir.
2002).  In other words, "[i]n the absence of a specific statutory
provision to the contrary, district courts have jurisdiction to
review agency action as part of their general federal question
jurisdiction, 28 U.S.C. § 1331."  *Proyecto San Pablo v. I.N.S.*,
189 F.3d 1130, 1136 n.5 (9th Cir. 1999).

    To invoke jurisdiction under the APA, a plaintiff must
establish:

> (1) an agency had a nondiscretionary duty to act
> and (2) the agency unreasonably delayed in acting
> on that duty.  Once a [plaintiff] has proven a
> right to relief under the circumstances, it is the
> reviewing court's duty to "compel agency action
> unlawfully withheld or unreasonably delayed."

*Chao*, 2007 WL 3022548, at *2 (quoting *Gelfer v. Chertoff*, No. C
06-06724 WHA, 2007 WL 902382, at *1 (N.D. Cal. Mar. 22, 2007)
(citing *Norton*, 542 U.S. at 63-65)).

**III. Mandamus Act.**

Under 28 U.S.C. § 1361, the Mandamus and Venue Act of 1962,
"[t]he district courts shall have original jurisdiction of any
action in the nature of mandamus to compel an officer or employee
of the United States or any agency thereof to perform a duty owed
to the plaintiff."  Mandamus is available only when (1) the
plaintiff's claim is clear and certain, (2) the defendant
official's duty is ministerial and so plainly prescribed as to be
free from doubt, and (3) no other adequate remedy is available.
*Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003).

When the relief a plaintiff is seeking is the same under
either the APA or the Mandamus Act, "proceeding under one
as opposed to the other is not significant." *Dong*, 513 F. Supp.
2d at 1161 (citing *Independence Mining Co. v. Babbitt*, 105 F.3d
502, 507 (9th Cir. 1997)), and *Hernandez-Avalos v. I.N.S.*,
50 F.3d 842, 845 (10th Cir. 1995)("'[a] mandatory injunction
[issued under the APA] . . . is essentially in the nature of
mandamus.'").

## DISCUSSION

**I.   The Court has jurisdiction over Plaintiffs' claims.**

For the Court to have jurisdiction over this matter pursuant to the APA and Mandamus Act, Defendants must have a nondiscretionary duty to act.  According to Defendants, 8 U.S.C. §§ 1255 and 1252 make clear the decision whether to grant an adjustment of immigration status is discretionary, and, therefore, the Court does not have jurisdiction over this matter.  Specifically, Defendants contend even though the APA in conjunction with 28 U.S.C. § 1331 may provide a federal court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed," 8 U.S.C. § 1252(a)(2)(B)(ii) divests the Court of jurisdiction to review claims relating to the adjustment of the status of resident aliens.

Section 1255(a) of the Immigration and Nationality Act (INA) provides in pertinent part:  "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe."[2]  In addition, § 1252(a)(2)(B) of the INA provides:

---

[2] Even though § 1255(a) refers to the Attorney General as the official who may grant an adjustment of immigration status, the authority to adjudicate applications for adjustment of the status of aliens has been transferred to the Secretary of the DHS and the USCIS.  *See* 6 U.S.C. §§ 271(b)(5) and 8 C.F.R. § 245.2(a).

> Notwithstanding any other provision of law
> (statutory or nonstatutory), including . . .
> section[ ] 1361 . . . no court shall have
> jurisdiction to review-
>
> * * *
>
> (ii) any other decision or action of the Attorney
> General or the Secretary of Homeland Security the
> authority for which is specified under this
> subchapter to be in the discretion of the Attorney
> General or the Secretary of Homeland Security,
> other than the granting of relief under section
> 1158(a) [dealing with asylum] of this title.

The Ninth Circuit has not addressed the question whether
§ 1252 together with § 1255 divests the Court of jurisdiction
to review actions of the USCIS with respect to Form I-485
Applications.  Some courts, however, have agreed with Defendants'
position and concluded courts do not have jurisdiction to review
the USCIS's failure to process Form I-485 Applications within a
reasonable time.  *See, e.g., Grinberg v. Swacina*, 478 F. Supp. 2d
1350, 1352 (S.D. Fla. 2007)(court concluded "[s]ections 242 and
245 of the Immigration and Nationality Act . . . preclude
judicial review of any discretionary 'decision or action' of the
Attorney General in immigration matters . . . includ[ing] the
pace at which immigration decisions are made.");  *Li v. Chertoff*,
482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007)(court concluded
"[t]hese statutes clearly convey Congress's intent to preclude
courts from reviewing discretionary decisions or actions of
USCIS regarding I-485 applications.");  *Safadi v. Howard*, 466
F. Supp. 2d 696, 698-700 (E.D. Va. 2006)(same);  *Zheng v. Reno*,

13 - OPINION AND ORDER

166 F. Supp. 2d 875, 880-81 (S.D.N.Y. 2001)(same).

On the other hand, the majority of district courts in the Ninth Circuit as well as numerous other courts have concluded the duty to adjudicate applications for adjustment of status is not discretionary even though the ultimate decision as to whether to grant an adjustment of immigration status is discretionary. *See, e.g., Kashkool v.* Chertoff, 553 F. Supp. 2d 1131, 1139 (D. Az. 2008); *Hong Wang v. Chertoff,* 550 F. Supp. 2d 1253, 1256 (W.D. Wash. 2008); *Shirmohamadali v. Heinauer*, 535 F. Supp. 2d 1059, 1061 (E.D. Cal. 2008); *Liu v. Chertoff*, No. CV-06-1682-ST, 2007 WL 2435157, at *7-8 (D. Or. Aug. 29, 2007); Cao *v. Upchurch*, 496 F. Supp. 2d at 573 (E.D. Pa. 2007); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 153-54 (D. Mass. 2007); *Elmalky v. Upchurch*, No. 3:06-CV-2359-B, 2007 WL 944330, at *3-*5 (N.D. Tex. Mar. 28, 2007; *Duan v. Zamberry*, No. 06-1351, 2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007).  In addition, as noted by the court in *Wang,* the United States District Courts for the Northern District of California and the Western District of Washington have addressed this issue numerous times, and each time they have concluded the USCIS has a nondiscretionary duty to adjudicate Form I-485 Applications.  550 F. Supp. 2d at 1256.

In *Dong v. Chertoff*, the court thoroughly analyzed the question of the court's jurisdiction to review an agency's failure to adjudicate an application for adjustment of

immigration status and noted "[t]he default rule is that agency
actions are reviewable under federal question jurisdiction, 28
U.S.C. § 1331 and the APA, even if no statute specifically
authorizes judicial review."  513 F. Supp. 2d 1158, 1164 (N.D.
Cal. 2007)(citing *ANA Int'l Inc. v. Way*, 393 F.3d 886, 890 (9th
Cir. 2004), and *Perez-Martin v. Ashcroft*, 394 F.3d 752, 757 (9th
Cir. 2005)).  The court also noted the Ninth Circuit's admoni-
tion in *Spencer Enterprises v. United States* that 8 U.S.C.
§ 1252(a)(2)(B)(ii)

> refers not to "discretionary decisions," as did
> the transitional rules . . ., but to acts the
> *authority* for which is *specified* under the INA to
> be discretionary.  Following the "well-
> established canon of statutory interpretation that
> the use of different words or terms within a
> statute demonstrates that Congress intended to
> convey a different meaning for those words," we
> must assume that this difference in language is
> legally significant.  If Congress had intended to
> withdraw jurisdiction over all "discretionary
> decisions," it would have used the same language
> found in the transitional rules.

*Dong*, 513 F. Supp. 2d at 1164 (quoting *Spencer*, 345 F. 3d 683,
689 (9th Cir. 2003))(emphasis in original).  The *Dong* court found
the Ninth Circuit's admonition in *Spencer* "cautions against
interpreting section 1252(a)(2)(B)(ii) as a blanket grant of
discretion to the Attorney General of all matters related to the
adjustment of immigration status.  The discretion granted by
statute is specified and limited." *Id.* at 1164-65.  The court
also noted the Fifth Circuit's similar analysis:

15 - OPINION AND ORDER

> [O]ne might mistakenly read § 1252(a)(2)(B)(ii) as
> stripping us of the authority to review any
> discretionary immigration decision.  Such a
> reading is mistaken, however, because
> § 1252(a)(2)(B)(ii) strips us only of jurisdiction
> to review the discretionary authority that is
> *specified in the statute*.  As we have repeatedly
> noted, we observe again that the language of
> § 1252(a)(2)(B)(ii) is thoroughly pellucid on this
> score; it does not allude generally to
> "discretionary authority" or to "discretionary
> authority exercised under this statute," but
> specifically to "authority for which is specified
> under this subchapter to be in the discretion of
> the Attorney General."

*Dong*, 513 F. Supp. 2d at 1165 (quoting *Ahmed v. Gonzales*,

447 F.3d 433, 436 (5th Cir. 2006))(emphasis in original).

Ultimately, the *Dong* court concluded § 1252(a)(2)(B)(ii) did not

deprive the court of jurisdiction to review the plaintiff's claim

that the determination of his Form I-485 Application had been

unlawfully withheld.    *Id*.

     This Court adopts the reasoning and analysis of the United

States District Courts of the Northern District of California and

the Western District of Washington, and particularly the *Dong*

court.   Thus, although the Court concludes the decision whether

to grant Plaintiffs an adjustment of immigration status to that

of lawful permanent resident is discretionary, Defendants' duty

to make an adjudication is not discretionary.

     Accordingly, the Court concludes § 1252(a)(2)(B)(ii) does

not deprive this Court of jurisdiction to review Plaintiffs'

claim that Defendants have unreasonably delayed adjudicating

their Form I-485 Applications.

## II. Defendants have unlawfully delayed adjudication of Plaintiffs' Form I-485 Applications for adjustment of immigration status.

Defendants contend Plaintiffs do not have a right to adjudication of their Form I-485 Applications within a particular time.

Some courts have concluded the APA requires adjudication to be completed "within a reasonable time." *See, e.g., Chao*, 2007 WL 3022548, at *3 (citing *Konchitsky v. Chertoff,* No. C-07-00294 RMW, 2007 WL 2070325, at *4 (N.D. Cal. July 13, 2007), and *Dong*, 513 F. Supp. 2d at 1169). *See also Lazli v. USCIS*, No. 05-CV-1680-ST (D. Or. Aug. 23, 2006)(court concluded USCIS had a nondiscretionary duty to adjudicate the plaintiffs' applications for naturalization and petitions to remove conditions on residence within a reasonable time). Other courts have noted "Congress sets a normative expectation in the Immigration Services and Infrastructure Improvements Act of 2000 of a reasonable processing time for an immigrant benefit application as no more than 180 days after initial application" and have applied 180 days as a standard. *Huang v. Mukasey*, 545 F. Supp. 2d 1170, 1174 (W.D. Wash. 2008). *See also Konchitsky,* 2007 WL 2070325, *4; *Kashkool*, 553 F. Supp. 2d at 1144. The court in *Dong* noted 8 C.F.R. § 103.2(b)(18) contains provisions that impose specific and detailed procedural requirements for

17 - OPINION AND ORDER

withholding adjudication of applications for adjustments of

residency status.  The Court, therefore, need not rely solely on

the general directive of the APA that agencies act in a timely

manner or in the normative expectation of 180 days.

        8 C.F.R. § 103.2(b)(18) provides:

>               A district director may authorize withholding
>       adjudication of a visa petition or other
>       application if the district director determines
>       that an investigation has been undertaken
>       involving a matter relating to eligibility or the
>       exercise of discretion, where applicable, in
>       connection with the application or petition, and
>       that the disclosure of information to the
>       applicant or petitioner in connection with the
>       adjudication of the application or petition would
>       prejudice the ongoing investigation.  If an
>       investigation has been undertaken and has not been
>       completed within one year of its inception, the
>       district director shall review the matter and
>       determine whether adjudication of the petition or
>       application should be held in abeyance for six
>       months or until the investigation is completed,
>       whichever comes sooner.  If, after six months of
>       the district director's determination, the
>       investigation has not been completed, the matter
>       shall be reviewed again by the district director
>       and, if he/she concludes that more time is needed
>       to complete the investigation, adjudication may be
>       held in abeyance for up to another six months.  If
>       the investigation is not completed at the end of
>       that time, the matter shall be referred to the
>       regional commissioner, who may authorize that
>       adjudication be held in abeyance for another six
>       months.  Thereafter, if the Associate Commis-
>       sioner, Examinations, with the concurrence of the
>       Associate Commissioner, Enforcement, determines it
>       is necessary to continue to withhold adjudication
>       pending completion of the investigation, he/she
>       shall review that determination every six months.

The record here does not reflect Defendants satisfied the

procedural requirements of § 103.2(b)(18) for withholding

18 – OPINION AND ORDER

adjudication on Plaintiffs' Form I-485 Applications.  As noted,
the APA requires courts to "compel agency action unlawfully
withheld or unreasonably delayed."  5 U.S.C. § 706(1).
Accordingly, the Court concludes Plaintiffs are entitled to
summary judgment on their claim that Defendants have unlawfully
delayed adjudication of Plaintiff's Form I-485 Applications for
adjustment of immigration status.

Even if § 103.2(b)(18) did not apply to this matter,
Plaintiffs would still be entitled to summary judgment based on
the reasoning of *Chao*, *Dong*, and *Lazli*; *i.e.,* the APA requires
agencies to act in a timely manner.  Several courts have
concluded, and this Court agrees, that an unjustified delay
of two years in adjudicating a Form I-485 Application is
presumptively unreasonable.  *See, e.g., Dong,* 513 F. Supp. 2d at
1169 (court concluded a delay in adjudicating Form I-485
Application for nearly two years was presumptively unreasonable);
*Chao*, 2007 WL 3022548, at *6 (court concluded a delay of two
years in adjudicating Form I-485 Applications was presumptively
unreasonable); *Gelfer*, 2007 WL 902382, at *3 (court held a delay
of more than two years in processing Form I-485 Application was
unreasonable as a matter of law).  Here Defendants' adjudication
of Plaintiffs' Form I-485 Applications has been delayed for six
years.

In response, Defendants maintain the delay was justified

between 2002 and May 10, 2005, because before May 10, 2005, the
law prohibited the USCIS from approving more than 10,000
permanent resident visas per year based on prior grants of
asylum.  In *Aboushan v. Mueller*, however, the court rejected a
similar argument and noted the government failed to establish how
extensive the backlog of applications was during the years in
which the plaintiff's application was pending, where the
plaintiff's application was in the agency's processing queue, and
why there was continued delay after the 10,000 cap was lifted.
475 F. Supp. 2d 943, 947 (N.D. Cal. 2007).  Similarly, in *Singh
v. Still*, the court held the repeal of the 10,000 cap in 2005
only partially excused the delay in the defendants' failure to
process the plaintiffs' application for adjustment of status.
470 F. Supp. 2d 1064, 1071 n.8 (N.D. Cal. 2007).

    Here Defendants note the total number of cases in the
backlog before May 10, 2005, was 160,000, but Defendants do not
present any evidence as to Plaintiffs' place in the application
queue during that time or what the backlog was when Plaintiffs
submitted their applications.  In addition, the USCIS did not
list the 10,000 cap on permanent resident visas as a cause for
the delay in processing Plaintiffs' applications in its June 16,
2004, letter to Plaintiffs.  Finally and in any event, as in
*Singh*, it has been more than three years since the ban was
lifted, and Defendants still have not adjudicated Plaintiffs'

20 - OPINION AND ORDER

applications.  In fact,  Defendants failed to complete
Plaintiffs' name checks until August and December 2007, over two
years after the cap was lifted.  On this record, the Court
concludes the 10,000 cap, at best, only mitigates Defendants'
failure to adjudicate Plaintiffs' applications before May 10,
2005.

Defendants also assert their March and July 2008 memoranda
instructing adjudicators to withhold adjudication of certain
applications excuse their failure to adjudicate Plaintiffs'
applications.  Even so, Defendants do not provide any
justification for their failure to adjudicate Plaintiffs'
applications for the nearly three years between May 2005 and
March 2008.  As noted, several courts have concluded, and this
Court agrees, that an unjustified delay of three years in
adjudicating a Form I-485 Application is presumptively
unreasonable.

Finally, Defendants assert if they are ordered to issue a
decision in this matter at this time, the decision will likely be
a denial of Plaintiffs' applications.  Defendants, therefore,
contend the Court should stay this matter for 180 days to allow
Defendant Chertoff to exercise his authority to waive the Tier
III bar to admission for Plaintiffs.

Although Plaintiffs acknowledge Defendants' assertion that
they will likely deny Plaintiffs' applications if Defendants are

21 - OPINION AND ORDER

ordered to adjudicate them at this time, Plaintiffs continue to request adjudication and to express their desire to assume the risk of denial.  Plaintiffs also note Defendants have not produced any evidence to establish that they have begun the process of considering whether to exercise their authority to grant a waiver to Plaintiffs.  As noted, Aytes stated in the July 2008 memorandum that the USCIS had developed a "212(a)(3)(B) Exemption Worksheet" to be completed by USCIS personnel in applications involving Tier III undesignated terrorist organizations, and "USCIS may not grant a benefit or relief to an alien who is inadmissible under INA section 212(a)(3)(B) unless the worksheet is completed."  Defendants do not state they have completed or submitted the Exemption Worksheet or even that they have begun the waiver process as to Plaintiffs.  In the absence of any evidence of progress on the waiver issue and in light of the six-year delay, the Court declines to stay this matter for any length of time.

In summary, the Court concludes on this record that the delay in this matter has been unreasonable as a matter of law.

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendants' Cross-Motion for Summary Judgment.

**CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiffs' Motion (#22) for Summary Judgment, **DENIES** Defendants' Cross-Motion (#35) for Summary Judgment or in the Alternative to Stay Proceedings, and

1.    orders Defendants to adjudicate Plaintiffs' Form I-485 Applications no later than March 11, 2009; and

3.    orders Defendants to file copies of the adjudications of Plaintiffs' Form I-485 Applications with the Court within five business days of the adjudications.

IT IS SO ORDERED.

DATED this 7th day of January, 2009.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge