IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BEHAJAT SEDIGHI and                           07-CV-1881-BR
SEYED BADIOZAMAM HASHEMI,

               Plaintiffs,                OPINION AND ORDER

v.

ERIC H. HOLDER, JR., United
States Attorney General;
ROBERT S. MUELLER, III; Director,
Federal Bureau of Investigation;
MICHAEL A. CANNON, Chief, National
Name Check Program; MICHAEL
CHERTOFF, Secretary of Homeland
Security; EMILIO GONZALEZ, Director,
USCIS; F. GERALD HEINAUER, Director,
USCIS Northern Service Center;
and WILLIAM McNAMEE, Director,
USCIS Portland,

               Defendants.

**MICHAEL T. PURCELL**
520 S.W. Yamhill
Suite 422
Portland, OR 97204
(503) 241-8203

        Attorney for Plaintiffs

**KARIN J. IMMERGUT**
United States Attorney
**JAMES E. COX, JR.**
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, OR 97204
(503) 727-1026

        Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion for Attorney's Fees and Costs (#57) pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

    For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion and awards attorneys' fees to Plaintiffs in the amount of **$22,437.90** and costs in the amount of **$350.00**.


<u>**BACKGROUND**</u>

    Plaintiffs Behajat Sedighi and Seyed Badiozamam Hashemi are wife and husband and citizens of Iran.  At some point, Plaintiffs applied for asylum in the United States.  On March 14, 1996, an administrative law judge (ALJ) heard Plaintiffs' asylum applications and denied them.  Plaintiffs appealed the ALJ's

2 - OPINION AND ORDER

decision to the Board of Immigration Appeals (BIA).

On July 30, 2001, the BIA sustained Plaintiffs' appeal, reversed the ALJ, and granted asylum to Plaintiffs.

On August 5, 2002, Plaintiffs each filed a Form I-485 Application with the United States Citizen and Immigration Services (USCIS) Nebraska Service Center in an effort to adjust their immigration status to that of lawful permanent residents (LPR).  When an individual applies for an adjustment of immigration status, USCIS conducts several security and background checks, including a Federal Bureau of Investigation (FBI) fingerprint check, a check against the Interagency Border Inspection System (IBIS) managed by the Department of Homeland Security (DHS), and an FBI name check.  At some point, Plaintiffs sent a letter to the President of the United States requesting action on their applications for adjustment of status.  On March 9, 2004, a Special Assistant to the President informed Plaintiffs that the White House was sending their inquiry to DHS.

On June 16, 2004, an official at USCIS Headquarters wrote to Plaintiffs informing them that their letter to the President had been forwarded to USCIS Headquarters.  The official further advised Plaintiffs that, among other things, the delays experienced by the USCIS in receiving the results of law-enforcement agency checks "has resulted in substantial delays in the processing of these applications. . . .  The USCIS continues

3 - OPINION AND ORDER

to make every effort to efficiently work through the backlog that
has been created."

In April 2006 Plaintiffs wrote the USCIS Nebraska Service
Center requesting action on their applications.  On May 26, 2006,
Gregory Christian, the Acting Chairman of the USCIS Nebraska
Service Center, informed Plaintiffs by letter that their
applications had been selected for "detailed review."  Christian
advised Plaintiffs that even though this meant their applications
would take longer to process, the USCIS would "make every effort
to complete this case as soon as possible."  On the same day,
Christian informed Sedighi by letter that the USCIS Nebraska
Service Center had lost her application file and requested she
submit a copy of the original application, the required
supporting documentation, a copy of the receipt notice for proof
of payment, and a letter explaining why she was submitting a
duplicate application.

On June 6, 2006, Sedighi submitted the requested materials.
Sedighi was fingerprinted on December 29, 2005; January 17, 2006;
July 18, 2006; and April 7, 2007.  Hashemi was fingerprinted on
July 31, 2004; January 17, 2006; and April 7, 2007.

In January 2007 Plaintiffs sought assistance with their
applications from United States Senator Ron Wyden.  On
January 17, 2006, the USCIS Nebraska Service Center responded
by letter to the request by Senator Wyden's office for a reason

4 - OPINION AND ORDER

for the delay in processing Plaintiffs' applications.  USCIS advised Sedighi's application was under review and Hashemi's application was awaiting results of the FBI name check.

On August 29, 2007, the FBI completed Hashemi's name check. On December 26, 2007, the FBI completed Sedighi's name check.

On December 26, 2007, Plaintiffs filed a Complaint for Declaratory, Injunctive, and Mandamus Relief in this Court in which they asserted Defendants breached their duty to Plaintiffs and violated the Administrative Procedures Act (APA), 5 U.S.C. § 555(b), by failing to adjudicate Plaintiffs' Form I-485 Applications within a reasonable time.  Plaintiffs requested the Court (1) to assume jurisdiction over this action, (2) to order Defendants to show cause why they have not acted promptly on Plaintiffs' applications for adjustment of status, (3) to issue a judgment that declares unlawful the failure of Defendants to perform their "assigned tasks in the processing of [Plaintiffs'] adjustment applications" within a reasonable time, and (4) to issue a judgment that bars Defendants from instituting any proceedings under 8 U.S.C. § 1256 to rescind approval of Plaintiffs' adjustment of status unless such rescission is based on newly-obtained information.

On January 25, 2008, the USCIS issued a Notice of Intent to Deny (NOID) Plaintiffs' application based on Hashemi's membership in the Kurdish Democratic Party of Iran (KPDI), a "Tier III

undesignated terrorist organization."  The USCIS informed
Plaintiffs that Hashemi's membership in KPDI likely rendered both
of them inadmissible under the Immigration and Nationality Act,
8 U.S.C. § 1182(a)(3)(B)(i)(IV) and (IX).

On February 26, 2008, Plaintiffs submitted to the USCIS
their responses to the NOID.

On March 26, 2008, the Deputy Director for USCIS, Jonathan
Scarfen, issued a department-wide memorandum instructing
adjudicators to withhold adjudication of applications that would
benefit from expanded discretionary authority granted to the
Secretary of the DHS under the Consolidated Appropriations Act of
2008.  Included in that class of applications were those in which
applicants and spouses were deemed inadmissible due to activity
or association with a Tier III undesignated terrorist
organization.

On July 28, 2008, USCIS Acting Deputy Director, Michael
Aytes, continued to instruct the department to withhold
adjudication of various applications, including those in which
applicants and spouses were deemed inadmissible due to activity
or association with a Tier III undesignated terrorist
organization.  Aytes also noted the USCIS had developed a
"212(a)(3)(B) Exemption Worksheet" to be completed by USCIS
personnel in applications involving Tier III undesignated
terrorist organizations.  Aytes pointed out that "USCIS may not

6 - OPINION AND ORDER

grant a benefit or relief to an alien who is inadmissible under INA section 212(a)(3)(B) unless the worksheet is completed."

On September 9, 2008, Plaintiffs filed a Motion for Summary Judgment in which they moved the Court to enter an order requiring Defendants to adjudicate Plaintiffs' Form I-485 Applications.  Plaintiffs asserted the Court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 in combination with the APA and 28 U.S.C. § 1361.

On September 26, 2008, Defendants filed a Cross-Motion for Summary Judgment in which they contended (1) the Court lacks subject-matter jurisdiction over this matter and (2) even if the Court had jurisdiction, the delay in adjudicating Plaintiffs' Form I-485 Applications was not unreasonable.

On January 8, 2009, the Court issued an Opinion and Order in which it concluded (1) it had subject-matter jurisdiction to review Plaintiffs' claim that Defendants have unreasonably delayed adjudicating their Form I-485 Applications and (2) Defendants had unlawfully delayed adjudication of Plaintiffs' Form I-485 Applications for adjustment of immigration status. Accordingly, the Court ordered Defendants to adjudicate Plaintiffs' Form I-485 Applications no later than March 11, 2009.

On March 13, 2009, Defendants filed a Notice of Compliance in which they advised the Court that on March 11, 2009, Sedighi's Application for Adjustment of Status was approved and Hashemi's

7 - OPINION AND ORDER

Application for Adjustment of Status was denied by the by the USCIS.

On March 19, 2009, the Court entered a Judgment in favor of Plaintiffs' and against Defendants.

On April 1, 2009, Plaintiffs filed a Motion for Attorney Fees and Costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).


**STANDARDS**

Under the EAJA, the Court may award a plaintiff attorneys' fees and costs if (1) the plaintiff is the prevailing party, (2) the government has not met its burden to show that its positions during the case were substantially justified or that special circumstances make an award unjust, and (3) the requested attorneys' fees and costs are reasonable.  28 U.S.C. § 2412(d)(1)(A).  *See also Perez-Arellano v. Smith,* 279 F.3d 791, 792 (9th Cir. 2002).

A "prevailing party" is one who has been awarded some relief by the court on the merits of at least some of his claims. *Hanrahan v. Hampton,* 446 U.S. 754, 758 (1980).  "Enforceable judgments and court-ordered consent decrees create 'the material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S.

598, 604 (2001)(internal citation omitted).

## DISCUSSION

Defendants do not dispute Plaintiffs were the prevailing party in this matter, but they contend Plaintiffs are not entitled to attorneys' fees and costs because the government was "substantially justified" in its position with respect to Plaintiffs' I-485 Applications. Defendants also contend if the Court concludes Plaintiffs are entitled to attorneys' fees and costs, they should not be awarded fees at a rate that exceeds the statutory maximum rate because neither specialized skills nor distinctive knowledge were necessary in this litigation. Finally, Defendants contend the hours sought by Plaintiffs' counsel are excessive.

## I.   Plaintiffs are entitled to reasonable attorneys' fees.

When the government opposes a prevailing party's request for attorneys' fees pursuant to the EAJA, the government bears the burden to demonstrate that its position regarding the underlying issues was substantially justified. *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005). The Ninth Circuit has held "substantial justification is equated with reason-ableness. . . . The government's position is substantially justified if it 'ha[d] a reasonable basis in law and fact.'" *Thangaraja v. Gonzales,* 428 F.3d 870, 874 (9th Cir. 2005)(quoting

9 - OPINION AND ORDER

*Ramon-Sepulveda v. INS*, 863 F.2d 1458, 1459 (9th Cir. 1988)).
*See also Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002)
("Substantial justification in this context means justification
to a degree that could satisfy a reasonable person.").

In *Thangaraja*, the Ninth Circuit concluded the Immigration
and Naturalization Service's (INS) decision to deny the
plaintiff's application for asylum was unsupported by substantial
evidence in the record. The Ninth Circuit noted its decision was
"a strong indication that the position of the United States was
not substantially justified." *Id*. The Ninth Circuit further
noted "it will be only a 'decidedly unusual case in which there
is substantial justification under the EAJA even though the
agency's decision was reversed as lacking in reasonable,
substantial and probative evidence in the record.'" *Id*. (quoting
*Al-Harbi*, 284 F.3d at 1085).

Here Defendants assert it was substantially justified in
delaying adjudication of Plaintiffs' Form I-485 Applications
because the USCIS's decision to delay adjudication was to
preserve the possibility of a more favorable adjudication for
Plaintiffs. To support their assertion, Defendants rely on *Khan
v. Scarfen*, No. 08-1398 SC, 2009 WL 941574 (N.D. Cal. Apr. 6,
2009).

In *Khan* the plaintiff applied for adjustment of status to
become a lawful permanent resident of the United States on

September 24, 2001. *Id*., at *1. The USCIS did not take any action on the plaintiff's application. In April 2007 the plaintiff filed an action in the United States District Court for the Northern District of California seeking an injunction compelling the USCIS, among others, to adjudicate his application. On August 13, 2007, the USCIS issued a NOID as to the plaintiff's application. On March 3, 2008, the USCIS denied the plaintiff's application pursuant to 8 U.S.C. § 1182(a)(3)(b)(vi)(III) on the ground that the plaintiff had been a member of a Tier III organization. *Id*. The district court dismissed the plaintiff's action shortly after the USCIS adjudicated the plaintiff's application. The plaintiff then filed a new action in which he alleged the USCIS's denial of his application was arbitrary, capricious, and contrary to law. *Id*., at *2. After Scarfen issued his March 26, 2008, internal memorandum, the USCIS notified the plaintiff that it had reopened his case and placed his application on hold. The plaintiff then filed an amended complaint in which he challenged the USCIS's decision to place his application on hold. The district court concluded it had jurisdiction to review the USCIS's action. *Id*., at *7.

On summary judgment, the issue before the *Khan* court was whether the USCIS "withheld or unreasonably delayed" adjudicating the plaintiff's application. *Id*. The court concluded the USCIS

did not unreasonably delay adjudication of the plaintiff's
application because the USCIS adjudicated the matter and then
reopened it, and, therefore, the plaintiff's application had been
pending for only one year after it was reopened. *Id.*, at *9. In
addition, the court noted the determination whether to grant an
applicant an exemption "is a complicated process, involving
inter-agency consultation." *Id.* Finally, the delay appeared to
favor the plaintiff because the government had previously
determined he was inadmissible and, absent the reopening and
review of his application, the plaintiff "would have a final and
unreviewable determination that he is inadmissible and not
eligible for adjustment of status." *Id.*

The facts in *Khan*, however, are distinguishable from the
facts in this case. As noted, here Defendants did not adjudicate
Plaintiffs' applications until ordered to do so by the Court.
Thus, although the plaintiff's application in *Khan* had been
pending only one year after it was reopened, Plaintiffs'
applications in this case were pending continuously over six
years. In addition, as the Court noted in its January 8, 2009,
Opinion and Order, the 10,000 cap on I-485 Applications that
existed before May 10, 2005, at best only mitigated Defendants'
failure to adjudicate Plaintiffs' applications before May 10,
2005. Defendants still failed to complete Plaintiffs' name
checks until August and December 2007, which was over two years

12 - OPINION AND ORDER

after the cap was lifted.  As the Court also noted in its January
8, 2009, Opinion and Order, even after the March and July 2008
directives Defendants did not submit or complete the
"212(a)(3)(B) Exemption Worksheet" that was to be completed in
applications involving Tier III undesignated terrorist
organizations even though, as Ayers noted in his July 2008
memorandum, "USCIS may not grant a benefit or relief to an alien
who is inadmissible under INA section 212(a)(3)(B) unless the
worksheet is completed."  Moreover, Defendants did not assert at
summary judgment that they had even initiated the waiver process
as to Plaintiffs.

On this record, the Court concludes Defendants have not
established their position as to Plaintiffs' I-485 Applications
was substantially justified pursuant to *Thangaraja* or *Khan*.
Accordingly, the Court finds Plaintiffs are entitled to an award
of attorneys' fees and costs.

**II.  Amount of attorneys' fees.**

**A.  Plaintiffs' counsel was required to have some
distinctive knowledge.**

Under 28 U.S.C. § 2412(d)(2)(A), *Thangaraja*, and Ninth
Circuit Rule 39-1.6, the maximum hourly rates under the EAJA
adjusted for increases in the cost of living are as follows:
$166.46 per hour for work done in 2007 and $172.45 for work done
in 2008 and the first four months of 2009.  The court may award
attorneys' fees at rates that exceed the statutory maximum if

13 - OPINION AND ORDER

"'the court determines . . . a special factor, such as the
limited availability of qualified attorneys for the proceedings
involved, justifies a higher fee.'" *Rueda-Menicucci v. INS*, 132
F.3d 493, 496 (9th Cir. 1997)(quoting 28 U.S.C. § 2412(d)(2)(A)).
The exception as to the limited availability of qualified
attorneys "'refers to attorneys having some distinctive knowledge
or specialized skill needful for the litigation in question.'"
*Id*. (quoting *Pierce v. Underwood*, 487 U.S. 552, 572 (1988)).

Attorney Michael Purcell seeks fees at a rate of $257
per hour for work performed in 2007 and $268 per hour for work
performed in 2008 and 2009 because of his expertise in
immigration law and the complexity of immigration law in general.
Defendants challenge Purcell's requested enhanced hourly rate on
the ground that special skills or distinctive knowledge was not
necessary for this particular litigation because the issue here
was whether Defendants had a mandatory, nondiscretionary duty to
adjudicate Plaintiffs' applications within a certain time, which
is a question arising under mandamus that does not require
distinctive or specialized skill in the field of immigration law.

The Ninth Circuit has noted "a speciality in
immigration law could be a special factor warranting an
enhancement of the statutory rate." *Id*. (citing *Pirus v. Bowen*,
869 F.2d 536, 542 (9th Cir. 1989)). In addition, the Ninth
Circuit described immigration law as a "labyrinth almost as

14 - OPINION AND ORDER

impenetrable as the Internal Revenue Code." *Escobar-Grijalva v. I.N.S.,* 206 F.3d 1331, 1334 (9th Cir. 2000).  Although this matter involved questions of mandamus relief and this Court's jurisdiction, the parties were required to be well-versed in various complicated provisions of immigration law and the ways in which those provisions interacted with one another.  In addition this matter also involved the added complexity of the effect of Defendants' stay of Plaintiffs' applications because of Hashemi's membership in a Tier III undesignated terrorist organization. Thus, the Court finds this matter required distinctive knowledge of immigration law, and, therefore, the Court may award fees at rates in excess of the maximum EAJA rates.

Plaintiffs submitted two declarations of attorneys who practice immigration law in Oregon in which they testify Purcell's requested rates are consistent with the market rate in Portland for attorneys with qualifications and experience equivalent to Purcell and who work on immigration matters similar to those at issue in this case.  *See* Larsson Decl. ¶¶ 5-7; Marandas Decl. ¶¶ 5-7.

Based on this record, the Court concludes the requested hourly rate for Purcell is reasonable and represents the "prevailing market rates for the kind and quality of the services furnished." *See* 28 U.S.C. § 2412(d)(2)(A).  Accordingly, the Court awards Purcell attorneys' fees at a rate of $257 per hour

15 - OPINION AND ORDER

for work performed in 2007 and $268 per hour for work performed
in 2008 and 2009.

**B.    Hours expended.**

Purcell requests 8.1 hours at $257 per hour and $268
for 88.40 hours.  Defendants object to the number of hours
enumerated by Plaintiffs.  Specifically, Defendants object to
(1) 7.4 hours for research as to the Court's jurisdiction over an
agency denial of a Form I-485 Application; (2) 28 hours for work
on Plaintiffs' Reply in support of their Motion for Summary
Judgment; (3) 1.5 hours for negotiations with Defendants
attempting to resolve the EAJA issues; (4) "almost 4 hours"
preparing for and attending Plaintiffs' interviews with the USCIS
in February and March 2009; and (5) 29.6 hours for work on
Plaintiffs' Reply in support of their Motion for Attorney's Fees
and Costs.

**1.    Researching Court's jurisdiction.**

As noted, Defendant objects to the 7.4 hours that
Purcell spent researching the Court's jurisdiction over an agency
denial of an application for adjustment of status on the ground
that it was not an issue in this action because Plaintiffs did
not amend their Complaint to seek review of a decision to deny
Hashemi's application.  In their Reply, Plaintiffs note the
government proffered a defense of mootness to counsel in an email
preceding the filing of the parties' Motions for Summary

16 - OPINION AND ORDER

Judgment.  In addition, Defendants raised the issue of jurisdiction under § 1252(g) in their Reply in support of their Motion for Summary Judgment.

On this record, the Court concludes Purcell's research as to the issue of jurisdiction was not unnecessary or excessive.  Accordingly, the Court declines to reduce counsel's requested hours for this task.

### 2.    **Work on Plaintiffs' Reply.**

Defendants object to counsel spending 28 hours on Plaintiffs' Reply in support of their Motion for Summary Judgment.  The Court, however, notes the issues in this matter, including jurisdiction and the merits of Plaintiffs' claims, are complex.  In addition, this Court has approved similar or greater hours for researching and drafting responses or replies to motions for summary judgment in other actions involving similar immigration matters.  *See, e.g., Al-Kudsi v. Gonzales*, No. 05-CV-1584-PK (D. Or. July 13, 2006)(Court approved 54.1 hours spent drafting Response brief), and *Lazli v. USCIS*, No. 05-CV-1680-ST (D. Or. July 25, 2007)(Court approved 24.3 hours spent drafting Reply briefs).

On this record, the Court concludes 28 hours for work on Plaintiffs' Reply brief is not excessive.  Accordingly, the Court declines to reduce counsel's requested hours for this task.

17 - OPINION AND ORDER

### 3.    Negotiations to resolve EAJA issues.

As noted, Defendants object to 1.5 hours that Purcell spent negotiating with them to resolve Plaintiffs' request for fees because the negotiations were unsuccessful.

Local Rule 7.1 requires parties to make a good faith effort "through personal or telephone conferences to resolve the dispute" before filing a motion or other document with the Court.

On this record, the Court concludes even though the parties could not resolve the EAJA issues, the 1.5 hours spent by Purcell conferring with defense counsel about the issue was not unnecessary or excessive.  Accordingly, the Court declines to reduce counsel's requested hours for this task.

### 4.    Preparation and attendance at Plaintiffs' interviews with the USCIS.

Defendants object to the time Purcell spent preparing for and attending Plaintiffs' interviews with the USCIS that occurred after the Court's January 8, 2009, Order to adjudicate Plaintiffs' applications.  Defendants contend these interviews addressed the substantive adjudication of Plaintiffs' applications rather than the issues of delay on which Plaintiffs prevailed in this action.

Plaintiffs rely on *Sullivan v. Hudson* to support their assertion that the time preparing for and attending their interviews with the USCIS should be allowable.  490 U.S. 877

18 - OPINION AND ORDER

(1989).  In *Sullivan*, the United States Supreme Court concluded EAJA fees may be awarded for work on administrative proceedings that are "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee aware."  *Id*. at 892.  *Sullivan* involved a Social Security matter remanded to the Commissioner for further proceedings.  Courts, however, have declined to extend *Sullivan* to immigration actions.  *See, e.g., Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) (declined to apply the EAJA to deportation proceedings noting "administrative immigration proceedings do not fall under section 554 and therefore are wholly outside the scope of the EAJA.");  *Singh v. I.N.S.*, No. C-92-1826 MHP, 1998 WL 101742, at *7-8 (N.D. Cal. Feb. 23, 1998)(declined to extend *Sullivan* to an immigration matter involving a remand to the Bureau of Immigration Affairs and declining to award fees under the EAJA for the administrative proceedings that followed remand).

Accordingly, the Court declines to award Purcell fees of $1,005.00 for 3.75 hours of time spent on preparing for and attending Plaintiffs' interviews at a rate of $268 per hour.

     **5.**    **Time spent preparing Reply in Support of Motion for Attorney's Fees and Costs under the EAJA.**

Defendants object to 29.6 hours Purcell spent preparing Plaintiffs' Reply in support of their Motion for Fees under the EAJA on the ground that it is excessive.  Plaintiffs' Reply brief is ten pages in length and supported by a four-page

19 - OPINION AND ORDER

Declaration by Purcell and Exhibits containing copies of *Khan, Al-Kuidsi,* and *Lazli*; copies of Defendants' emails regarding their opposition to attorneys' fees and scheduling the USCIS interview with Hashemi; Defendants' Reply in support of their Motion for Summary Judgment; and a copy of the Oregon State Bar 2007 Economic Survey.

On this record, the Court concludes 29.6 hours to draft and to assemble these documents is excessive. Accordingly, the Court declines to award Purcell ten of the hours he requested for work on Plaintiffs' Reply brief in support of their Motion for Attorney's Fees for a total of of $2,680.00 in disallowed fees for this task.

In summary, the Court awards $22,437.90 in attorneys' fees to Plaintiffs which is Plaintiffs' requested amount of $26,122.90 less $1,005.00 and $2,680.00.

**III. Costs.**

Plaintiffs request $350.00 for the filing fee in this matter. Defendants do not object to Plaintiffs' costs.

**A.    Standards.**

Absent a showing of circumstances not relevant here, an award of costs is governed by federal law. *See In re Merrill Lynch Relocation Mgt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987)(dictum).

28 U.S.C. § 1920 allows a federal court to tax specific

20 - OPINION AND ORDER

items as costs against a losing party pursuant to Federal Rule of
Civil Procedure 54(d)(1).  Section 1920 provides:

> A judge or clerk of any court of the United
> States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any
> part of the stenographic transcript
> necessarily obtained for use in the case;
> (3)Fees and disbursements for printing and
> witnesses;
> (4)Fees for exemplification and copies of
> papers necessarily obtained for use in the
> case;
> (5)Docket fees under section 1923 of this
> title;
> (6)Compensation for court-appointed experts,
> compensation of interpreters, and salaries,
> fees, expenses, and costs of special
> interpretation services under § 1828 of this
> title.
>
> A bill of costs shall be filed in the case
> and, upon allowance, included in the judgment
> or decree.

The court has broad discretion to allow or to disallow
a prevailing party to recoup costs of litigation.  The court,
however, may not tax costs beyond those authorized by § 1920.
*Frederick v. City of Portland*, 162 F.R.D. 139, 142 (D. Or. 1995).

**B.   Analysis.**

The Court finds Plaintiffs' costs are allowed under
§ 1920 and are both reasonable and supported by the evidence in
this matter.  Accordingly, the Court awards $350.00 in costs to
Plaintiffs.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiffs' Motion for Attorney Fees and Costs (#57) pursuant to the Equal Access to Justice Act and **AWARDS** attorneys' fees to Plaintiffs in the amount of **$22,437.90** and costs in the amount of **$350.00**.

IT IS SO ORDERED.

DATED this 1st day of July, 2009.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge